**Laura CAPLIN et al., Plaintiffs,**

v.

**Gerard OAK et al., Defendants.**

**No. 71 Civ. 1265.**

United States District Court,
S. D. New York.

March 7, 1973.

New York City Civil Liberties Union, New York City, Alan H. Levine, New York City, of counsel, for plaintiffs.

J. Lee Rankin, Corp. Counsel of City of New York, New York City, Mary P. Bass, New York City, of counsel, for defendants.

## OPINION

TENNEY, District Judge.

Plaintiffs, students and former students in several Junior and Senior High Schools in New York City, have brought this action, pursuant to 42 U.S.C. § 1983 (1970), on their own behalf and on the behalf of all others similarly situated against defendants, the Board of Education of the City of New York (hereinafter the "Board"), Harvey Scribner (Chancellor of New York City Public Schools) and the principals of plaintiffs' respective schools for violations and deprivations of plaintiffs' first amendment rights. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1343 and 2201 et seq. (1970). Plaintiffs now move this Court, pursuant to Fed.R.Civ.P. 56(a), for summary judgment, or, in the alternative, pursuant to Fed.R.Civ.P. 65, for a preliminary injunction, and, pursuant to Fed.R.Civ.P. 23, for a determination of a valid class action. Defendants, in turn have moved this Court, pursuant to Fed.R.Civ.P. 12(h)(3), to dismiss the complaint for lack of jurisdiction. For the reasons set out *infra,* plaintiffs' motions are denied in all respects, and defendants' motion is granted.

Before proceeding to a determination of the motions, it is necessary to review the procedural background of this action. Plaintiffs' original complaint, filed on March 18, 1971, contained the following demands for relief: (1) that the Court issue an order declaring that (a) plaintiffs and others similarly situated be allowed to distribute literature on school property so long as the distribution does not substantially disrupt normal school activities; (b) such distribution not be conditioned upon obtaining prior approval of the literature's contents; (c) plaintiffs and others similarly situated have access to and use of school facilities on the same terms that apply to other students and student groups; (2) that the Court issue an order preliminarily and finally ordering defendants to (a) cease all disciplinary action against plaintiffs or members of their proposed class for disseminating literature in a non-disruptive manner on school property; (b) expunge all entries in school records regarding such dissemination of literature; (c) cease the practice of requiring prior approval of the content of literature which plaintiffs and the members of their proposed class wish to distribute on school property; (d) permit the distribution of literature on school property as long as such distribution does not substantially disrupt normal school activities; (e) permit plaintiffs to use school facilities on the same terms as apply to other students and student groups. On March 16, 1971, plaintiffs filed a motion for summary judgment and/or a preliminary injunction.

Consideration of that motion was adjourned to November 30, 1971 by stipulation between the parties dated June 23, 1971. The terms of the stipulation obligated defendant Board to take all necessary steps to (1) enforce Circular 104 (Statement of Student Rights in New York City High Schools promulgated by the Board); (2) insure a prompt disposition of appeals taken pursuant to Circular 104; (3) assure that there would be no interference with student distribution of the Student Rights Handbook (hereinafter "Handbook") as long as such distribution does not substantially interrupt normal school activities; (4) assure that distribution of all non-official publications will be permitted in all high schools as long as such distribution does not substantially interrupt normal school activities; (5) assure that no prior approval of the contents of non-official publications will be required as a condition of their distribution; (6) assure that no entries will be made in official school records of a stu-

dent's proper exercise of rights under Circular 104 and to expunge all entries theretofore made; and (7) inform all principals of high schools in Queens and the principal of Washington Irving High School in Manhattan that a copy of the stipulation be posted in a conspicuous place in their schools. If the Board were to implement all of the above provisions, the action was to be withdrawn on November 30, 1971. Upon the failure of the Board to comply with the stipulation, plaintiffs retained the right to renew their motion.

On March 22, 1972, plaintiffs noticed the examination by deposition of several defendants. On May 10, 1972 plaintiffs filed an amended complaint which differed from the original only in the prayer for relief. Plaintiffs added requests for attorney's fees and nominal damages of $500. In addition, several of the demands for declaratory and injunctive relief were modified: in some requests the word "literature" was changed to read "not obscene or libelous literature" (requests 1(a), 2(a), (b) and (d) *supra*) or "non-official literature" (requests 1(b) (now 1(c)) and 2(c) *supra*); and a new request 1(b) was added asking for a declaration that no literature be banned as obscene unless the material therein

> "(i) predominantly appeals to the prurient, shameful or morbid interest of minors and (ii) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors, and (iii) is utterly without redeeming social importance for minors." (Plaintiffs' amended complaint at 10).

Plaintiffs next filed, on June 8, 1972, a supplemental notice of motion for summary judgment and/or preliminary injunction. While its basic purpose was to conform the earlier motion to the amended complaint, it also added a motion for an order allowing the action to proceed as a class action, pursuant to Rule 23.

On June 19, 1972, defendants filed their answer and affidavits in opposition to plaintiffs' motion. On June 28, 1972, defendants brought on by an order to show cause a motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(h)(3).

*Facts*

The amended complaint alleges that plaintiffs Siler and Silverman were students at Jamaica High School in Jamaica Queens, and that defendant Schuker was the principal of Jamaica at the time this action was instituted. In September 1970, Siler, Silverman and other students not named as plaintiffs in this action, sought permission from Schuker to distribute the New York Civil Liberties Union Student Rights Handbook. On the advice of the Principal's (Schuker's) Consultative Council, through which all requests for distribution of literature were routed, Schuker granted permission to distribute the Handbook on one morning only and only at one prescribed location outside the school building. Plaintiffs, however, made an additional distribution the next day in defiance of his order. It is claimed that the "screening" procedure employed results in a system of prior censorship which is barred by the first and fourteenth amendments to the Constitution. It is further claimed on information and belief, that distribution of the Handbook at other unnamed Queens high schools was absolutely prohibited.

The complaint further alleges that plaintiff Caplin was a student at Washington Irving High School in Manhattan and that defendant Oak was principal of Washington Irving at the time this action was instituted. Caplin, and other students unnamed as plaintiffs in the instant suit, requested and were denied permission to distribute the Handbook at locations inside the school where other literature was normally distributed. It is claimed that Oak took this action because he thought that portions of the Handbook were obscene. In addition,

the complaint alleges that the distribution of other literature by Caplin and other unnamed students was restricted to an area near the main door of the school while other materials were freely sold and distributed at locations which allowed for more complete dissemination to the entire student body of Washington Irving. It is claimed that these restrictions, too, are violative of the first and fourteenth amendments to the Constitution.

Similar events are alleged to have occurred at Junior High School No. 65 in Manhattan where plaintiffs Cordero and Portalatin were students and defendant Fine was principal at the inception of the suit. Plaintiffs allege that Cordero and Portalatin requested permission to distribute both the Handbook and the Student Voice (a newspaper published by Cordero and Portalatin) and that defendant Fine refused permission on the grounds that the Student Voice contained profanities and that the Handbook was an inaccurate portrayal of Board policies. Furthermore, Fine and other unnamed school administrators refused permission for Cordero, Portalatin and others to use school facilities to work on the Student Voice and as a forum for speakers from the New York Civil Liberties Union to discuss students' rights. This, too, it is claimed, is a violation of the first and fourteenth amendments to the Constitution.

### Lack of a Justiciable Controversy

 The prime requisite for the maintenance of a declaratory judgment action is the existence of an actual controversy, particularly when the constitutionality of legislative acts is challenged. "No federal court, whether this Court or a district court, has 'jurisdiction to pronounce any statute, either of a State or of the United States, void, because irreconcilable with the Constitution, *except as it is called upon to adjudge the legal rights of the litigants in actual controversies.*' Liverpool N.Y. & P.S.S. Co. v. Commissioners, 113 U.S. 33, 39 [, 5 S.Ct. 352, 28 L.Ed. 899] (1895). . . . The express limitation of the Declaratory Judgment Act to cases 'of actual controversy' is explicit recognition of this principle." Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L. Ed.2d 113 (1969).

The fact that the challenged provision in the instant case is an administrative regulation, rather than a legislative act, does not diminish the applicability of this general principle. The first question before this Court is, then,

". . . whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Golden v. Zwickler, *supra*, 394 U.S. at 108, 89 S.Ct. 956 at 959.

It appears to this Court, from the unrebutted affidavits submitted in opposition to plaintiff's motion for summary judgment, that plaintiff has received all of the relief requested in the amended complaint with the exception of the $500 damages and the redefinition of the obscenity standard in Circular 104. (These items are discussed *infra*). The affidavit of Isaiah E. Robinson, Jr., president of the New York City Board of Education, states that it is the policy of the Board to allow distribution of non-official literature without any prior approval so long as such distribution does not substantially disrupt normal school activities. (Robinson Aff., ¶¶ 3, 4). This policy has been affirmed by both the Chancellor of the Board of Education and the Board itself in Appeal of Jonathan Williams (March 30, 1971). Robinson's affidavit further states that it is the policy of the Board not to make notations on the records of students who disseminate non-official literature in a manner non-disruptive of normal school activities. (Robinson Aff., ¶ 5). Furthermore, the affidavits of the principals of Washington Irving and Jamaica High Schools state that no notations

have been made in the records of any student regarding the distribution of non-official literature. (Oak Aff., ¶ 5; Maloff Aff., ¶ 5). Finally, the affidavit of the acting principal of Junior High School No. 65 states that all students have equal access to the school's facilities providing that the students can find a teacher who will supervise their activities. (Apicos Aff., ¶ 6).

The Court concludes from these affidavits that the policy of the Board is in accord with both the applicable constitutional standard, Tinker v. Des Moines Independent School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), and the relief sought by plaintiffs, and that it was the actions of individual school administrators misinterpreting the Board's policies which produced the instant conflict. It is apparent that the Board has taken the appropriate steps to enforce its policy. (*See,* Zack Aff., ¶¶ 2–5). Indeed, defendants' affidavits indicate that it intends to enforce Circular 104 in precisely the manner suggested by plaintiffs' draft circular (Notice of Supplemental Motion for Summary Judgment, Exhibit B–1), with the exception of the proposed obscenity standard discussed *infra.*

■ Defendants are correct in asserting that voluntary cessation of the conduct complained of does not mandate the absence of a justiciable controversy. United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). It should be emphasized however, that the Court in *Grant* was not referring to *every* voluntary cessation of wrongful conduct but rather those cases where " 'abandonment seems timed to anticipate suit, and there is probability of resumption.' United States v. Oregon State Medical Society, 343 U.S. 326, 333 [72 S.Ct. 690, 695, 96 L.Ed 978] (1952)." United States v. W. T. Grant Co., *supra,* 345 U.S. at 632 n. 5, 73 S.Ct. at 897. There is, in the case *sub judice,* a substantial question of whether defendants' conduct was actually "voluntary" within the meaning of *Grant* and *Oregon State Medical Society.* The

corrective steps agreed to in the stipulation of June 23, 1971 were taken with the consent, if not at the behest, of plaintiffs. Even if these steps are assumed to be "voluntary" for the purpose of this motion, the action may still be moot if the defendant can show that there is no reasonable expectation of repeated wrongful conduct. United States v. W. T. Grant Co., *supra,* 345 U.S. at 633, 73 S.Ct. 894. The affidavit of Jacob Zack, Assistant Superintendent of Schools of the City School District of the City of New York, clearly indicates that adequate measures have been taken to effect compliance with Board policies and to prevent any future non-compliance. (Zack Aff., ¶¶ 2–6). The affidavits of the principals of the high schools named in the complaint indicate that no further attempts to interfere with the distribution of non-official literature have been or shall be undertaken.

■ Plaintiffs claim that there is ample evidence of a likely repetition of the wrongful conduct. To substantiate this claim they cite to statements made by various principals criticizing the stipulation entered into by the Board and plaintiffs. Plaintiffs have not, however, submitted any evidence indicating that these protestations have been manifested in any overt conduct. Furthermore, the mere threat of wrongful conduct does not establish the requisite controversy. *See, e. g.,* Poe v. Ullman, 367 U.S. 497, 507, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); United Public Workers v. Mitchell, 330 U.S. 75, 89–90, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

■ This Court is also in disagreement with plaintiffs' assertion that this action is one which is "capable of repetition yet evading review" and, therefore, should be controlled by such decisions as Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) and Carroll v. Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968). Those cases concerned controversies which were rendered moot merely by the passage of time, *i. e.,* in *Moore,* the election for

which the nominating procedures were challenged had already taken place and in *Carroll* the injunction which was contested had already expired. Thus, it was the delay inherent in the appellate process which had defeated, and would continue to defeat, final adjudication of the controversies rather than the acts of a party to the action. If this Court were to declare the instant action moot merely because the named plaintiffs were no longer students at the named schools or because some of the named defendants no longer held the positions alleged in the complaint, then plaintiffs, undoubtedly, would be correct in their assertion. That, however, is not the holding of this Court.

■■ Plaintiffs next contend that a controversy still exists because defendants failed to fulfill their obligations under the stipulation. It is claimed that in agreeing to the stipulation, the Board was obliged to revise Circular 104 and that it subsequently reneged on its undertaking. While the Court is of the opinion that the Board did, indeed, meet its obligations, it is possible to interpret the stipulation in a light favorable to plaintiffs' contention. Nevertheless, it is "the facts alleged" which determine the existence of a justiciable controversy. Golden v. Zwickler, *supra*, 394 U.S. at 108, 89 S.Ct. at 959. Parties may not fabricate jurisdiction by stipulation.

> "[T]he court is not empowered to decide moot questions or abstract propositions. . . . No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard."

California v. San Pablo & Tulare R. R. Co., 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893).

■■ Plaintiffs further assert that even if the action is deemed to be moot as to the named plaintiffs, the class action should be allowed to continue. *See, e. g.*, Gaddis v. Wyman, 304 F.Supp. 717, 721 (S.D.N.Y.1969) (three-judge court), affirmed, 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38 (1970); Kelly v. Wyman, 294 F.Supp. 887, 890 (S.D.N.Y.1968). This contention presupposes the existence of a valid class, a determination which this Court has not yet made. Plaintiffs propose the following class:

> "[A]ll students of New York City High Schools and New York City Junior High Schools who desire to exercise their First Amendment rights to distribute and receive literature and to meet in and use school facilities on the same terms as apply to other students and student groups." (Plaintiffs' Amended Complaint ¶ 7).

Even if the Court were to grant the motion for a determination of a valid class action, it is still clear that no justiciable controversy exists between the members of the proposed class and defendants. It is incumbent upon this Court to review the Board's regulation as it is now interpreted, not as it was interpreted at the commencement of the litigation. Hall v. Beals, 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); Lopez v. White Plains Housing Authority, 355 F. Supp. 1016 (S.D.N.Y.1972). As this Court has already noted, defendants have reinterpreted and enforced the statement of student rights contained in Circular 104 in a manner consistent with the requirements of the Constitution. Defendants' affidavits indicate that relief is afforded not only to the named plaintiffs but to all other students as well. Since plaintiffs have made no showing of any further deprivation of students' rights to distribute and receive literature (other than the allegedly unconstitutional obscenity standard which is discussed *infra*), it cannot be said that a justiciable controversy exists as to the proposed class.

The question of whether that portion of Circular 104 which prohibits the distribution of "obscene literature" is constitutionally defective is not, as is the issue of the distribution of non-obscene non-official literature, moot. What distinguishes the two issues is that in the latter, individual school administrators deviated from the Board's constitution-

ally correct policy, while in the former, it is the stated policy of the Board itself which is being challenged. The Board has made no revision to its stated policy since the commencement of this action. The fact that it has declared the Handbook to be non-obscene sheds no light on the standards employed in reaching that decision. Those same standards, presumably, will be used in the future to determine what literature will be distributed in the schools. Furthermore, the mere fact that the students involved in the attempted distribution of the Student Voice are no longer enrolled in Junior High School No. 65, or that defendant Fine is no longer its principal, does not render the issue moot. To so hold would be to create a question capable of repetition yet evading review.

Defendants have not requested that this Court issue an injunction enjoining the Board and the appropriate school from barring, as obscene, the distribution of a particular publication. Nor have they requested an order declaring a particular piece of literature non-obscene. Rather they attack the validity of the regulation on its face and ask that the Court declare that no literature be banned as obscene unless it

> "(i) predominantly appeals to the prurient, shameful or morbid interest of minors, and (ii) is patently offensive to prevailing standards in the adult community as a whole with respect to minors, and (iii) is utterly without redeeming social importance for minors."

It should be noted that this is the very same standard contained in N.Y. Penal Law § 235.20(6) (McKinney's Consol. Laws, c. 40, 1967), (formerly N.Y. Penal Law § 484-h) pertaining to the sale of literature to minors, which was sustained by the Supreme Court in Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).

Defendants first assert that plaintiffs have injected the issue of obscenity, by means of the amended complaint, merely to revive an otherwise "dead" controversy. The Court does not agree. The question of proper obscenity standards has been in the action from its very inception. (Complaint ¶¶ 22, 24). Furthermore, Fed.R.Civ.P. 15(a) permits amendment of the complaint "at any time before a responsive pleading is served" without first obtaining leave of the Court. On May 10, 1972, the date on which the amended complaint was filed, defendants had yet to respond to the original complaint.

Defendants next assert that at least as to the issue of proper obscenity standards in junior high schools, the complaint should be dismissed for failure to join an indispensable party. It is alleged that Junior High School No. 65 is within the control and the discretion of Community School Board No. 2 (hereinafter "Community Board") pursuant to N.Y. Education Law § 2590-e (McKinney's Consol.Laws, c. 16, 1970). Even if the Community Board were found to be an indispensable party to the action the defect would not be fatal to plaintiffs since the Court has the power to order that an indispensable party be joined. Fed.R.Civ.P. 19(a). There is no need for such an order in the instant case, however, since this Court is of the opinion that the issue of proper obscenity standards is not justiciable at this time.

The fact that an issue is technically not moot does not end this Court's inquiry into the propriety of issuing the requested order. The Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., (1970), "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Public Service Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952). The courts may not, of course, abuse this discretionary power and deny declaratory relief arbitrarily. Public Affairs Press v. Rickover, 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed. 604 (1962).

As indicated *supra*, the prime requisite of declaratory relief is the ex-

istence of a justiciable controversy. Golden v. Zwickler, *supra*, 394 U.S. at 110, 89 S.Ct. 956. The mere fact that an issue is technically not moot does not mandate a finding of justiciability and, hence, the issuance of a declaratory judgment. *See, e. g.*, Koppell v. Levine, 347 F.Supp. 456 (E.D.N.Y.1972). "Justiciability is itself a concept of uncertain meaning and scope." Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). However nebulous the concept may be, perhaps the best description of the relationship between justiciability and declaratory relief has been offered by Mr. Justice Jackson.

"But when all of the axioms have been exhausted and all words of definition have been spent, the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power. While the courts should not be reluctant or niggardly in granting this relief in the cases for which it was designed, they must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especially in the field of public law. A maximum of caution is necessary . . . where a ruling is sought that would reach far beyond the particular case. Such differences of opinion or conflicts of interest must be 'ripe for determination' as controversies over legal rights. The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." Public Service Comm'n of Utah v. Wycoff Co., *supra*, 344 U.S. at 243–244, 73 S.Ct. at 240.

The obscenity issue before this Court does not comport with those requirements. The instant case involves two school administrators who were at-tempting to interpret the Board's policy on distribution of literature. One of the publications declared obscene, the Student Voice, contained only one word that could have been considered obscene. Defendant, Fine's decision, however, was never appealed to higher authority and, therefore, cannot be considered a reflection of Board policy. The other publication, the Handbook, was similarly declared obscene on the basis of one word. Defendant Oak's determination was, however, overruled by the Board. This is especially significant in light of the decision rendered in Koppell v. Levine, *supra*, 347 F.Supp. 456, which reversed a previous decision of the Board holding a student publication obscene. The standard applied by Judge Weinstein is the very same one advanced by the defendants here. · It is, therefore, quite conceivable that the Board is already employing the standard suggested by plaintiffs. It cannot be said that the issue has taken on a "fixed and final shape" or that the Court "can see what legal issue it is deciding."

More importantly, the relief sought by defendants has implications reaching far beyond the instant case. The effect of the requested declaratory order would be felt not only upon future literature sought to be distributed by students, but it is quite likely to have a pronounced effect upon materials sought to be distributed by the schools to the students. Moreover, the requested relief would have absolutely no impact upon the publications named in the complaint nor upon most of the named plaintiffs who sought to distribute them, since they are no longer students within the jurisdiction of the Board.

Finally, this Court finds itself in agreement with the views expressed by Judge Weinstein in *Koppell*, although those views were expressed in the context of a dispute of the proper time limitations on prior review of literature to be distributed, rather than on the issue of proper obscenity standards.

"Recent years have evidenced considerable alteration, occasioned by legislation, judicial decisions and evolving social attitudes, of traditional assumptions concerning student rights and, more generally, the role that younger members of our society are to play.

\* \* \* \* \* \*

"We can properly give time to local authorities to work out appropriate methods of dealing with first amendment questions. Premature straightjacketing by the courts may abort sound and imaginative methods of dealing with the problem.

"No useful purpose will be served, under the present facts of this case, by imposing an opinion of this court on current re-evaluation of an aspect of the relationship between students and school authorities, where plaintiffs will not be prejudiced, the issues are not clearly defined and the educational authorities have not yet had a full opportunity to bring the relevant questions to the benefit of their expertise." Koppell v. Levine, *supra,* 347 F.Supp. at 464–465.

*Damages and Attorney's Fees*

Plaintiffs have demanded nominal punitive damages and reasonable attorney's fees. While punitive damages are authorized in a civil rights action, Sostre v. McGinnis, 442 F.2d 178, 204 (2d Cir. 1971), there must be some showing of bad faith or some indication of deterrent impact to warrant such relief. Sostre v. McGinnis, *supra,* 442 F.2d at 205; Koppell v. Levine, *supra,* 347 F.Supp. at 465. The complaint, the moving papers and the supportive materials contain no such showing. Consequently, plaintiffs' cause of action for nominal damages must be dismissed. Since all of plaintiffs' causes of action are dismissed there will be no award of attorney's fees.

Therefore, and for the foregoing reasons, plaintiffs' motion for summary judgment and/or preliminary injunction and to declare a valid class action is denied, and defendants' motion to dismiss the complaint is granted.

So ordered.