Wayne SCHWENK, Plaintiff,

v.

Michael KAVANAUGH, Ulster County District Attorney; and Kathleen Keating, Assistant District Attorney, Ulster County, Defendants.

No. 94–CV–773.

United States District Court, N.D. New York.

March 24, 1998.

Ricken, Goldman, Sussman & Blythe (Alan N. Sussman, of counsel), Kingston, NY, for Plaintiff.

Cook, Tucker, Netter & Clonan (Robert E. Netter, of counsel), Kingston, NY, for Defendants.

### SUPPLEMENTAL MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

### I. *INTRODUCTION*

By Memorandum–Decision and Order dated March 5, 1998, plaintiff was awarded $1.00 in nominal damages after a finding that defendants Michael Kavanaugh ("Kavanaugh") and Kathleen Keating ("Keating") violated plaintiff's Federal constitutional rights. Additionally, a finding was made that the facts of the case support an award of punitive damages. Decision was reserved as to the amount of punitive damages to be awarded

pending submissions from the parties. *See Schwenk v. Kavanaugh,* 4 F.Supp.2d 110 (N.D.N.Y.1998) (Hurd, M.J.) (hereinafter *"Schwenk III"*); *see also* Report–Recommendation (Oct. 11, 1995) (Hurd, M.J.); Order (Aug. 8, 1996) (Scullin, D.J.). Familiarity with the prior decisions is assumed.

■ Plaintiff filed a Demand for Hearing limited to the assets and liabilities of defendants (Docket No. 62). However, defendants filed a document in which the Ulster County Attorney, Francis T. Murray, confirmed that any amount of punitive damages awarded against defendants which is sustained on appeal will be paid by Ulster County (Docket No. 63). Accordingly, a hearing as to personal assets and liabilities in order to determine an amount of damages which would be punitive to these defendants is unnecessary. *See Mathie v.. Fries,* 121 F.3d 808, 816 (2d Cir.1997).

### II. DISCUSSION

■ The purpose of punitive damages is to punish wrongdoing, deter the current defendants and others like them, from similar conduct in the future. *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 19–20, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). By deterring similar wrongdoing in the future, the public is protected. *Id.* at 19. Punitive damages are not in any way meant to compensate the victim. *Id.* An award of punitive damages is discretionary, and should be made upon "consideration [of] the character and the degree of the wrong as shown by the evidence and necessity of preventing similar wrong." *Id.* (internal quotation omitted). *Id.*

■ The defendants in this case procured plaintiff's psychiatric records in violation of his constitutional rights, warranting imposition of punitive damages. *See Schwenk III.* The public has a significant interest in protecting the confidentiality of medical records in general, and of psychiatric records in particular. Thus, the public interest in deterring the type of conduct in which defendants engaged is high. It is important in protecting the public interest that not only these

defendants, but other public prosecutors, attorneys, and anyone in a position to obtain medical records be deterred from doing so without following the steps necessary to assure that the confidentiality of a patient, such as the plaintiff, is preserved to the maximum extent possible.

■ An amount must be determined which would further the primary goal of this punitive damage award, deterrence. Because Ulster County will pay any punitive damage award assessed against the defendants, a large monetary award will not serve as a deterrent to them. *See Mathie,* 121 F.3d at 816 n. 6; *Sostre v. McGinnis,* 442 F.2d 178, 205 (2d Cir.1971) (punitive damage award with minimal deterrent impact unwarranted), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972); *Caplin v. Oak,* 356 F.Supp. 1250, 1259 (S.D.N.Y.1973) (punitive damages warranted only if showing of bad faith or deterrent impact). While a large punitive award here may provide deterrence to others who would not be reimbursed by their employer, in the circumstances presented here, a large punitive award is not necessary.

■ Judicial notice is taken that since the filing of *Schwenk III,* an article appeared on the front page of the New York Law Journal.[1] *See* Gary Spencer, *Ulster D.A. Assessed For Punitive Damages,* New York Law Journal, Mar. 16, 1998, at 1 (hereinafter "NYLJ Article"); *see also Today's Top Stories,* (Mar. 16, 1998), <http://ljx.com/nylj/ix031698.html$. The article, featuring a prominent photograph of Kavanaugh, summarized the *Schwenk III* decision assessing punitive damages. *See* NYLJ Article. The article contained many quotes from *Schwenk III,* and characterized the decision as "a very rare instance of a district attorney being held liable for official conduct." *See id.* The New York Law Journal had an average distribution of 15,513 copies each day (Monday to Friday) for the twelve months ending March 31, 1997. Audit Bureau of Circulations, *Audit Report: Newspaper, New York Law Journal (Morning), New York, NY,* at 1, 5 (ABC October 1997). The

distribution is nationwide, but the concentration is in New York City and New York State. *See id.* It is estimated that the daily distribution is now 16,000 copies with a readership estimated to be triple that figure, or 48,000. Telephone Interview by Law Clerk Donna Case with Donna Miceli, Circulation Dep't, New York Law Journal (Mar. 19, 1998).

Appearing in an article discussing conduct which warrants punitive damages, with a wide circulation among the bench and bar, must be considered punitive to the attorneys whose conduct is the subject of the article. Further, the threat of appearing in another such article provides sufficient deterrence to these defendants. The deterrent effect of the New York Law Journal article is as powerful, if not more so, as any monetary award would be. Moreover, the deterrent effect of this type of article extends not only to the defendants in this case, but literally across the country to all of the readership of the New York Law Journal.

### III. *CONCLUSION*

Accordingly, an award of One Dollar ($1.00) in punitive damages is made against Kavanaugh, and an award of One Dollar ($1.00) in punitive damages is made against Keating. Any additional monetary award would be superfluous and would not provide any additional punishment or deterrence above and beyond the punishment and deterrence provided by *Schwenk III* and the New York Law Journal article. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 270, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (factfinder has broad discretion in making punitive damages award).

The plaintiff may file and serve an application for attorney's fees and expenses on or before April 6, 1998. Defendants may file and serve a response to the application for attorney's fees on or before April 20, 1998. Final judgment will be entered following the decision regarding attorney's fees and expenses. Again, the parties are encouraged to settle or stipulate that amount.

IT IS SO ORDERED.

---

1. The article is reproduced in Appendix I.

APPENDIX I

New York Law Journal Mar. 16, 1998, page 1.

# Ulster D.A. Assessed For Punitive Damages

## *Violation of Suspect's Privacy Rights Found*

**BY GARY SPENCER**

ALBANY — A federal judge has awarded punitive damages against Ulster County District Attorney Michael Kavanagh and an assistant prosecutor, finding that they violated a burglary defendant's constitutional right to privacy by obtaining his psychiatric records.

The district attorney's office engaged in a "fishing expedition" when it subpoenaed the records, Northern District Magistrate Judge David N. Hurd declared in a decision released last week. Prosecutors never offered a valid reason for obtaining the records, failed to comply with state confidentiality laws and evaded judicial review of their efforts, he said.

"Such actions by public officials must be deterred," Judge Hurd wrote, "and because we all have personal and private medical or psychiatric records, the public must be protected."

The judge ruled that Mr. Kavanagh and Assistant District Attorney Kathleen Keating, who is now a prosecutor in the Brooklyn District Attorney's Office, are liable for punitive damages.

**Ulster County D.A. Michael Kavanagh**

But he did not set the award's amount, giving the parties an opportunity to settle it themselves.

Mr. Kavanagh said the ruling in *Schwenk v. Kavanagh,* 94-CV-773, will be appealed, noting that the psychiatric records were obtained with a judicial subpoena. "We got a county-level judge to sign a subpoena that required the production of these records," he said.

The decision represents a very rare instance of a district attorney being held liable for official conduct, ac-

**Continued on page 5, column 1**

# Prosecutor Assessed Punitive Damages

Continued from page 1, column 6

cording to plaintiff's attorney Alan N. Sussman of Ricken Goldman Sussman & Blythe in Kingston, who said courts have accorded prosecutors and judges "almost absolute immunity" from civil liability.

Magistrate Judge Hurd, of Utica, said he did not consider the issue of qualified immunity because the prosecutors did not raise it as an affirmative defense or assert it in their motions or submissions. Mr. Kavanagh said his attorney, Robert E. Netter of Cook Tucker Netter & Clonan in Kingston, assured him the immunity defense was raised. "If it was, we will ask the judge to reconsider," he said.

### Civil Rights Suit

The civil rights suit was brought under 42 USC §1983 by Dwayne Schwenk, who was indicted for burglary in the fall of 1992. Six weeks before his trial was to begin, state troopers took him to the psychiatric wing of Kingston's Benedictine Hospital following a suicide attempt and excessive drinking. He remained there for three days under an involuntary commitment, divulging "intimate personal details of his life and the lives of other members of his family," Judge Hurd said.

Ms. Keating was in charge of the burglary case and the judge said she sought Mr. Schwenk's records "on the chance that they might contain information which could be helpful to her direct case or to impeach [Mr. Schwenk] in the event he testified in his own behalf." She prepared a judicial subpoena and obtained signatures from Mr. Kavanagh and Ulster County Court Judge Francis T. Vogt, but Judge Hurd said she did not explain her need for the records or notify the defendant.

The subpoena "improperly directed" the hospital to deliver the records to the district attorney's office rather than to the court, the judge said. When the public defender learned of the disclosure during the trial, he demanded the return of the records and Judge Vogt agreed. Mr. Schwenk did not attend most of his trial and did not learn of the disclosure until after his conviction, as he was preparing his own criminal appeal in prison.

He obtained the records from the public defender and "found detailed information regarding his suicide attempt, his sister's schizophrenia, his father's depression, and his mother's nervous breakdown," Judge Hurd said. "He also found detailed information about his sex life, his history of drug and alcohol abuse, and his friends and acquaintances." Mr. Schwenk initiated his civil rights suit while in prison, then retained Mr.

Sussman to pursue it.

Judge Hurd held that the prosecutors violated Mr. Schwenk's right to privacy and due process by obtaining the records without notice to Mr. Schwenk and without giving Judge Vogt an opportunity to determine whether the prosecutors' need for disclosure outweighed Mr. Schwenk's interest in confidentiality, as required by the Constitution and New York statutes.

### $1 Awarded

He found that Mr. Schwenk was not entitled to compensatory damages and awarded a nominal one dollar, as well as attorney's fees and expenses. But he said, "[P]unitive damages are appropriate in order to deter, to protect, and hopefully to set an example for the defendants and others who might be tempted to take a 'short cut' in securing possession of a person's mental health records."

"[U]nlike hospital records regarding treatment for a physical injury such as a broken arm," he said, "the hospital records in question were psychiatric records which revealed information of the most compellingly private nature."

Mr. Kavanagh said Ulster County will be responsible for paying the damage award. He said the appeal will be filed after Judge Hurd decides the amount of the damages.