Nathaniel E. SLAVIN and Jack Taylor Family Foundation on behalf of themselves and all others similarly situated, Plaintiffs,

v.

MORGAN STANLEY & CO., INC., Goldman Sachs & Co., and Merrill Lynch, Pierce, Fenner & Smith, Inc., Defendants.

Civ. A. No. 91–10191–S.

United States District Court, D. Massachusetts.

May 11, 1992.

---

Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, Mass., Edward Labaton, Martiss V. Anderson, Fredric Eisenberg, Goodkind, Labaton & Rudoff, Jules Brody, Stull, Stull & Brody, New York City, for plaintiffs.

Steven W. Hansen, John J. Curtin, Bingham, Dana & Gould, Boston, Mass., Richard E. Carlton, Sullivan & Cromwell, Wash-

ington, D.C., Steven L. Holley, Sullivan and Cromwell, New York City, for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

SKINNER, District Judge.

Defendants, three major financial institutions, served as underwriters for a set of Bank of New England bonds in September, 1989. Each defendant underwrote approximately one third of the $250 million dollar principal amount of the bonds, which were then sold on a public offering. On January 7, 1991, the Bank of New England ("BNE") filed for bankruptcy, rendering the bonds worthless. Plaintiffs assert their claims as a class action, purporting to represent the class of investors who purchased the bonds from September 13, 1989, the date of an allegedly false and misleading prospectus, through January 19, 1990, the date that BNE publicly announced major financial losses. The complaint alleges violations of federal securities law and associated state common law claims.

The defendants move to dismiss the federal claims on three grounds: a statute of limitations bar, failure to state a claim upon which relief may be granted, and failure to plead fraud with particularity. Defendants also move to dismiss the state law claims under the *Gibbs* doctrine. Plaintiffs oppose all of defendants' grounds for dismissal.

## FACTS

■ For purposes of a motion to dismiss, I assume the well-pleaded facts as they appear in the complaint to be admitted, indulging every reasonable inference in favor of the non-moving party. *See Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 25 (1st Cir.1987).

Defendants issued a prospectus dated September 6, 1989, and a supplement dated September 13, 1989 (as supplemented, the "prospectus") in connection with the sale of the bonds. The prospectus specifically incorporated various annual, quarterly, and current reports on forms 10–K, 10–Q, and 8–K for the periods preceding the offering. Plaintiffs Jack Taylor Family Foundation and Nathaniel E. Slavin purchased the bonds on September 15, 1989 and September 21, 1989.

Plaintiffs allege that the incorporated documents were materially false and misleading both when issued and as of the date of the prospectus, and their express incorporation into the prospectus rendered the prospectus materially false and misleading. Specifically, the plaintiffs state that the Office of the Comptroller of the Currency ("OCC") had issued a report of supervisory activity of the bank, dated December 31, 1988, which criticized certain loan practices of the bank as being unsafe or unsound. As a result, the OCC and BNE entered into an agreement on August 10, 1989, whereby BNE would be required to review and revise its commercial loan policies, to improve loan administration procedures, and to review its bad debt losses at least quarterly. The existence of neither the December 1988 OCC report nor the August 1989 OCC–BNE agreement was disclosed in the September 1989 prospectus. Instead, the prospectus merely stated that BNE had recently improved its oversight of credit matters.

Plaintiffs also claim that the second quarter 10–Q form was false and misleading in that it failed adequately to disclose known trends which were likely to result in a higher bad debt ratio and lower net income. Plaintiffs point to a suit instituted by the Securities and Exchange Commission against BNE which was based on this allegation to which BNE consented to a final judgment in late 1990.

Plaintiffs further allege that the defendants underwrote the bonds at a time that they knew that BNE was making false and misleading statements and omissions. Plaintiffs concede that various published articles and statements were made in the fall of 1989 which revealed that the OCC and BNE had reached some sort of an agreement and that BNE would post substantial losses in the fourth quarter. Plaintiff Taylor Foundation wrote to defendant Goldman, Sachs several times between Oc-

tober, 1989 and December, 1989, questioning the underwriter's due diligence in investigating the underlying security as required by the securities laws, intimating that it expected Goldman, Sachs to refund the purchase price of the bonds, and threatening suit under the Securities Act of 1933. Goldman, Sachs responded to each of the Taylor Foundation letters, denying its lack of diligence, citing to a news article in which BNE denied the materiality of the OCC agreement, and refusing to refund any money. All plaintiffs allege that they first obtained actual knowledge of the underwriters' fraud in November, 1990, when plaintiffs' counsel learned from BNE's counsel that the underwriters were aware of the existence and contents of the August, 1989 OCC–BNE agreement at the time the underwriters issued the September, 1989 prospectus. On January 18, 1991, plaintiffs filed this suit.

## DISCUSSION

### I *Statute of Limitations*

The defendants' motion, which apparently seeks to dismiss both the 1933 Act and 1934 Act claims on statute of limitations grounds, was originally based on the plaintiffs' failure to bring suit within one year of the fall of 1989, the time that the defendants assert that the plaintiffs were on inquiry notice of potential fraud. The defendants then supplemented their motion with ·a renewed argument for a statute of limitations bar in light of recent Supreme Court case law. Following statutory reversal of the Supreme Court's decisions, the defendants now challenge the constitutionality of the statute by way of another supplemental memorandum. Plaintiffs oppose all motions.

### a) The 1933 Act

Section 13 of the Securities Act of 1933, 15 U.S.C. §§ 77a et seq., requires that a claim for relief under sections 11 and 12(2) be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." *Id.*, § 77m.

■ The analytical approach mandated by our court of appeals is for the court to first ask whether the plaintiff was on inquiry notice of fraud, triggered merely by evidence of the possibility of fraud. If he was on such inquiry notice and failed to file suit in a timely manner, the probe turns to whether the plaintiff exercised due diligence in attempting to uncover the factual basis underlying the alleged fraudulent conduct. *See Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir.1987); *Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798, 803 (1st Cir.1987); *Cook v. Avien, Inc.*, 573 F.2d 685, 696–97 (1st Cir.1978).

■ Facts that trigger inquiry notice are "sufficient storm warnings to alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved in the sale." *Cook*, 573 F.2d at 697. Thus, the standard is an objective one. Here, the plaintiffs apparently recognize that the disclosure of the existence of the OCC–BNE agreement in October and other public disclosures constituted sufficient "storm warnings" as of the fall of 1989 to alert a reasonable investor of the possibility that BNE had defrauded them, but they deny that at that time they were put on inquiry notice that the *underwriters* had defrauded them. I disagree. The underwriters are major institutions who purchased and reissued a quarter of a billion dollars worth of paper while under a duty to exercise due diligence to verify the accuracy of BNE's representations. The prospect that BNE pulled the wool over the eyes of the underwriters by concealing the existence of major federal regulatory action should give rise to some skepticism, and a reasonable investor wishing to preserve his right to sue the underwriters should have inquired into the underwriters' role in any fraud. I therefore hold that under the 1933 Act, the plaintiffs were under a duty, commencing at some time before January, 1990, to investigate whether the underwriters had any knowledge that the prospectus which they prepared contained the omissions and inaccurate statements which plaintiffs now assert to have been fraudulent.

Once a plaintiff is on inquiry notice of possible fraud, he has a duty to exercise reasonable diligence to unearth the factual basis of a securities fraud claim. *Cook*, 573 F.2d at 696. If he does exercise reasonable diligence, the limitations period is suspended by the doctrine of equitable tolling. Because over one year elapsed between the public disclosure of the OCC–BNE agreement and other "storm warnings" in the fall of 1989 and the filing of this action on January 18, 1991, plaintiffs must show that they failed to discover the fraud despite reasonable diligence.

■ The determination of whether a plaintiff actually exercised reasonable diligence is a subjective inquiry, focusing on the circumstances of the particular case. *Maggio*, 824 F.2d at 128. It is plaintiffs' burden to show compliance with the statute of limitations. *Cook*, 573 F.2d at 695. The exercise of reasonable diligence is determined by examining "the nature of the misleading statements alleged, the opportunity to discover the misleading nature of the statements, and the subsequent actions of the parties." *Id.* at 696–97.

The nature of the misleading statements and omissions alleged is that the underwriters knew that BNE was in a weaker financial position, thus less likely to fulfill its obligations to repay the notes, than was represented by the underwriters in the prospectus.

The opportunity to discover the misleading nature of the statements was available to the investors before January, 1990 by newspaper articles concerning the bank's financial troubles and public disclosure of the existence of the OCC agreement. Plaintiff Taylor Foundation not only had the opportunity, but also indicated by its letter to Goldman, Sachs that it in fact had concluded, in the fall of 1989, that the prospectus was misleading when issued. All plaintiffs had a similar opportunity to discover that the prospectus was misleading by comparing the public statements with the representations in the prospectus.

■ The complaint alleges that only one of the plaintiffs, Taylor Foundation, sent letters to Goldman, Sachs, which in turn denied that it had misled any investors. Goldman's denial of wrongdoing should not have deterred this plaintiff from pursuing its inquiry into the matter where the plaintiff was on inquiry notice that it had been defrauded. The only allegation in the complaint regarding that any of the other plaintiffs were reasonably diligent is their stated conclusion that they were. This legal conclusion, however, is not enough.

■ "Normally, the exercise of reasonable diligence would be a question of fact and not amenable to summary disposition." *Kennedy*, 814 F.2d at 803. However, where plaintiff has not met his burden of alleging *facts* which could lead to an inference of reasonable diligence, there is no resulting opportunity for that inference to toll the statute of limitations. *See Abelson v. Strong*, 644 F.Supp. 524, 533 (D.Mass. 1986). Although plaintiff Taylor Foundation's letters present a close question of whether the complaint has alleged reasonable diligence by one plaintiff, I hold that none of the 1933 Act claims in this case are subject to equitable tolling because the complaint fails to allege sufficient facts from which an inference of reasonable diligence on the plaintiffs' part may be drawn. The plaintiffs were on inquiry notice of defendants' fraud at some time before January 18, 1990, thus their 1933 Act claims filed on January 18, 1991 are barred by the one-year statute of limitations.

### b) The 1934 Act

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240–10b–5, have no statutorily prescribed limitations period. Prior to the Supreme Court's ruling in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), courts in the first circuit were required to look to the limitations period applicable to the most analogous cause of action under state law. *Cook*, 573 F.2d at 694. For the reasons stated in *Abelson v. Strong*, 644 F.Supp. 524, 530–32 (D.Mass. 1986), I remain of the opinion that the

Massachusetts statute most analogous to § 10(b) and Rule 10b–5 is the Uniform Securities Act, M.G.L. c. 110A § 410(a)(2), which provides for a two-year statute of limitations. This position was adopted by other courts within our circuit. *See Alton v. Prudential–Bache Securities, Inc.,* 753 F.Supp. 39, 41 (D.Mass.1990), and cases cited therein. Other circuit courts of appeal were in disagreement, and required a standard federal limitations period. *See, e.g., Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385, 1389–92 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991).

In *Lampf,* the Court held that a uniform federal rule should apply. The period of limitation is one year from actual discovery of the fraud, and the period of repose is three years from the date of the misrepresentation. *Lampf,* 111 S.Ct. at 2782. The Court rejected the theory of equitable tolling as being "fundamentally inconsistent" with the one-and-three-year structure. *Id.*

The same day that *Lampf* was decided, the Court decided *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), holding that a new rule of law announced and applied in a given case should be applied retroactively in all pending cases. In response to these cases, Congress enacted Section 27A of the Comprehensive Deposit Insurance Reform and Taxpayer Protection Act of 1991, codified as Section 27A of the Securities Exchange Act of 1934 (Section 27A) in November, 1991, which instructed the courts to apply pre-*Lampf* and *Beam* limitation principles to those cases which were pending as of the day before *Lampf* and *Beam* were decided, June 19, 1991.

■ The plaintiffs filed suit some sixteen months after the prospectus was issued. Therefore, the suit is timely under a two-year statute of limitations. The complaint's allegations, which must be taken as true for purposes of this motion, are that the plaintiffs first gained actual knowledge of facts sufficient to support a claim of fraud two months prior to the filing of this action. Consequently, the suit is timely under the one-year rule announced in *Lampf.* The defendants' attempt to employ the "reasonable diligence" standard to toll the limitation period is contrary to the specific guidance issued by the Court in *Lampf:* "The 1–year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary." *Id.,* 111 S.Ct. at 2782. Thus, it matters not whether pre- or post-*Lampf* law is to be applied to this case, because the plaintiffs' 1934 Act claims are timely filed under either set of rules. The defendants' attack on the constitutionality of Section 27A on separation of powers grounds is therefore not relevant to the disposition of this case and I decline to rule on it.

### c) Notice to the Attorney General

■ In accordance with the provisions of Fed.R.Civ.P. 24(c) and 28 U.S.C. § 2403(a), the Attorney General of the United States must be notified when the constitutionality of an Act of Congress has been called into question. The court retains jurisdiction to decide the case even if it has not yet notified the Attorney General. *See* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1915, at 420 (1986). In *O'Quinn v. Chambers County,* 636 F.Supp. 1388, 1390 n. 1 (S.D.Tex.1986), the court held that the requirements of Rule 24(c) and § 2403(a) were met where the court upheld the constitutionality of a statute, certified a copy of the court's order to the Attorney General, and expressed a willingness to entertain the Attorney General's motion for rehearing if he believes that intervention is required. *See also Jones v. Lubbock,* 727 F.2d 364, 372 (5th Cir.1984) (similar procedure used to satisfy 28 U.S.C. § 2403(a)). I hold that the requirements of Rule 24(c) and § 2403(a) are similarly met where, as here, the court declines to rule on the constitutionality of a statute, if a certified copy of the court's order is presented to the Attorney General and the Attorney General is given an opportunity to move for rehearing. The clerk shall provide the Attorney General with a certified copy of this order.

## II  *Failure to State a Claim*

■ The defendants characterize the complaint as an impermissible attempt to transform a claim of corporate mismanagement into a federal securities fraud claim. While the plaintiffs' bedrock difficulty may be with the corporate mismanagement of BNE, the complaint at issue is one which alleges that the underwriters fraudulently concealed specific material information concerning the financial health of BNE in order for the underwriters to profit from the sale of securities. These allegations constitute adequate claims under federal securities law because their essence lies in a failure of full and fair disclosure, not in a failure to manage the company well. *See Hurley v. Federal Deposit Ins. Corp.*, 719 F.Supp. 27, 30–31 (D.Mass.1989); *cf. Virginia Bankshares, Inc. v. Sandberg*, — U.S. ——, 111 S.Ct. 2749, 2758 n. 6, 115 L.Ed.2d 929 (1991) (holding that although "fairness" of a merger is an issue of state law, a proxy statement's allegedly false claim of merger's fairness implicates § 14(a) of the 1934 Act).

## III  *Fed.R.Civ.P. 9(b)*

■ Fed.R.Civ.P. 9(b) requires factual circumstances constituting a claim of fraud to be stated with particularity. The rule applies to § 10(b) and Rule 10b–5 claims. *Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 12–14 (1st Cir.1984). The factual circumstances alleged must specify the time, place, and content of an alleged false representation. *Id.* at 13. The First Circuit has been "especially rigorous in demanding such factual support in the securities context . . ." *Romani v. Shearson Lehman Hutton*, 929 F.2d 875 (1st Cir.1991); however, "a plaintiff need not specify the circumstances or evidence from which fraudulent intent could be inferred." *Id.* at 878.

■ The time and place requirements are satisfied by the allegation that the September 13, 1989 prospectus is the source of the alleged fraud. *See Romani*, 929 F.2d at 878. The content requirement is satisfied by the allegations that the defendants knowingly allowed the allegedly material contents of the OCC findings and the subsequent OCC–BNE agreement to be withheld from the prospectus. This case is unlike the numerous cases cited by the defendants in which sweeping generalizations concerning the quality of corporate management or its financial health were alleged to be misrepresented. Here, the allegations suffice because they refer to the omission of specific, allegedly highly relevant, material documents. Consequently, I need not delve more deeply into the issues argued at great length by the parties such as whether the alleged mischaracterization of BNE's lending practices as "prudent and reliable" satisfies Rule 9(b). *Cf. Hurley v. Federal Deposit Ins. Corp.*, 719 F.Supp. 27, 30–31 (D.Mass.1989) (holding that complaint which includes allegations of specific bad loans and their effect on the bank's periodic reports satisfies Rule 9(b)).

Finally, defendants argue that scienter is not adequately alleged in this case. I disagree. The plaintiffs have not only pled the knowing involvement of the defendants in the alleged fraud generally, they have also pled the existence of evidence tending to show that the defendants had the requisite knowledge of the misleading nature of the prospectus at the time it was issued by stating that their attorney learned of the defendants' knowledge from BNE's attorney. The plaintiffs have met their burden of pleading scienter.

## IV  *State Law Claims*

In accordance with 28 U.S.C. § 1367, the state law claims which comprise the same case or controversy will not be dismissed because the federal claims remain viable. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

Accordingly, the defendants' motion to dismiss is *allowed* with respect to counts I and II and *denied* with respect to counts III, IV, and V. The clerk shall serve the Attorney General of the United States with a certified copy of this order for review of part I(c).