**BLUE CROSS OF CALIFORNIA,**
et al.,

v.

**SMITHKLINE BEECHAM CLINICAL
LABORATORIES, INC.**

No. 3:97CV1795 AVC.

United States District Court,
D. Connecticut.

March 31, 2000.

John Burns Farley, Daniel P. Scapellati, Halloran & Sage, Hartford, Thomas W. Brunner, Laura A. Foggan, C. Russell Clause, Eric Mahr, Nicole Telecki, Kirk J. Nahra, David O. Ferry, Clifford M. Sloan, Rand L. Allen, Russell D. Duncan, Wiley, Rein & Fielding, Alison M. Duncan, David L. Douglass, Thomas O. Gorman, Heather J. Stewart, Porter, Wright, Morris & Arthur, Washington, DC, for Blue Cross of CA, plaintiffs.

Bourke G. Spellacy, Richard S. Order, Donald C. Mahoney, Updike, Kelly & Spellacy, P.C., Hartford, CT, Herbert Dym, Mark H. Lynch, Bobby R. Burchfield, Ethan M. Posner, Covington & Burling, Washington, DC, Frederick G. Herold, Thoma H. Lee, II, Dechert, Proce & Rhoads, Philadelphia, PA, John P. Lynch. Joseph A. Sullivan, Lathan & Watkins, Chicago, IL, for SmithKline Beecham Clinical Labs, Inc., defendant.

## RULING ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COVELLO, Chief Judge.

This is a consolidated action for legal and equitable relief in which the plaintiffs, thirty-seven health care insurers, four health care plans, and six individuals, claim that the defendant, SmithKline Beecham

Clinical Laboratories, Inc. (SBCL), engaged in, *inter alia,* fraudulent billing practices. The second amended complaint and the amended class action complaint assert causes of action pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S 1961 *et seq.,* ("RICO"), the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), the Pennsylvania Insurance Fraud Statute, 18 Pa.Con.Stat.Ann. § 4117(a)(2) and under state common law tenets sounding in fraud and unjust enrichment.

On July 2, 1999, the court dismissed the RICO action asserted in counts I, II, and III of the second amended class action complaint, the ERISA action asserted in count IV of the second amended class action complaint to the extent the claims were asserted by 31 of the plaintiff-insurers, and count V alleging federal common law claims. Further, the court dismissed counts I and III of the consolidated class action complaint alleging causes of action under RICO and federal common law, respectively, and dismissed counts IV, V and VI of the consolidated class action complaint to the extent those claims were asserted by the four plaintiff-employee benefit plans.

Pursuant to Federal Rule of Civil Procedure 56(c), SBCL now moves for summary judgment on the plaintiffs-insurers' state law claims set forth in counts VI, VII and VIII of the second amended complaint. SBCL argues that these claims are barred by the applicable statute of limitations. The issues presented are: (1) whether count VI, which alleges violations of the Pennsylvania Insurance Fraud Statute, 18 Pa.Con.Stat. § 4117(a)(2), is barred by Pennsylvania's two-year statute of limitations governing fraud claims; (2) whether count VII, which alleges common law fraud, is barred by Connecticut's three-year limitation period governing fraud claims; and (3) whether count VIII, which seeks recovery under the equitable doctrine of unjust enrichment, should be dismissed when related legal claims are time-barred.

For the reasons hereinafter set forth, counts VII and VIII are time-barred, and count VIII is properly dismissed on grounds that the related legal claims are time-barred. Accordingly, the motion is granted.

### FACTS

The facts underlying this case have been set forth in several of the court's previous decisions, including *Blue Cross of California v. SmithKline Beecham Clinical Laboratories, Inc.,* 62 F.Supp.2d 544, 548 (D.Conn.1998). In light of these decisions, familiarity with which is presumed, the court will recite only those facts essential to the within motion for summary judgment.

Examination of the second amended complaint, affidavits, pleadings, exhibits, supplemental materials, and the Local Rule 9 statements accompanying the motion for summary judgment, and the responses thereto, discloses the following undisputed, material facts:

On August 19, 1997, thirty-seven insurance companies ("the plaintiffs-insurers") initiated this lawsuit against SBCL. SBCL is a subsidiary of SmithKlein Beecham plc, a British corporation and incorporated in the state of Delaware. SBCL owns and operates one of the nation's largest chains of clinical laboratories.

On September 19, 1998, the plaintiffs-insurers filed their second amended complaint against SBCL. The gravamen of the second amended complaint is that from 1989 to 1995, SBCL engaged in fraudulent billing practices that resulted in millions of dollars in losses to the plaintiffs-insurers. Specifically, the plaintiffs-insurers allege that SBCL exploited the health care payment system in five fundamental ways: 1) SBCL billed the plaintiffs-insurers for tests that physicians did not order or intend to order and billed for tests that it had led physicians to believe would not

result in separate charges ("add-ons"); 2) SBCL offered physicians discounts for certain test packages, but billed the plaintiffs-insurers for the full price for supposedly discount test packages ("selected discounts"); 3) SBCL billed the plaintiffs-insurers separately for expensive constituents of test panels that should have been billed at a single composite rate ("unbundling"); 4) SBCL performed and billed for more expensive tests than were ordered ("upcoding"), and in some cases performed; and 5) SBCL inserted fabricated diagnosis codes to obtain reimbursement from third-party payers ("code jamming").

Without admitting any of the alleged conduct, SBCL has provided the court with an abundance of undisputed evidence indicating the above enumerated "challenged activities" were widespread in the clinical laboratory industry and known to the plaintiffs-insurers long before the filing of the original complaint. In this regard, between 1990 and 1993, the national media and various professional organizations had released to the public volumes of information concerning fraudulent billing practices by several national, clinical laboratories, to include SBCL.

Specifically, as early as May 1990, the Office of the Inspector General ("OIG") was investigating National Health Laboratories ("NHL"), one of the nation's largest clinical laboratories, for "false billing and improper use of panel testing." (SBCL's Ex. 6, *National Health Labs Target of Criminal Probe*, Nat'l. Intelligence Rep., May 25, 1990 at 3.) NHL publicly acknowledged the OIG investigation in December 1990. (SBCL's Ex. 8, *National Health Labs, Subject to Federal Grand Jury Probe, Says It will Cooperate With U.S. Attorney*, Nat'l Intelligence Rep., Dec. 1990.) Media coverage of the grand jury inquiry continued into the summer of 1992. (SBCL's Ex. 11, Don Bauder, *Speculation Rises on Probe of La Jolla Firm*, San Diego Union–Trib., Aug. 12, 1992.) In September 1992, the media reported that NHL was negotiating with federal officials to settle the probe of its laboratory billing practices, including its billing for tests containing improperly added profiles. (SBCL's Ex. 12, *Government May Settle With National Health Labs*, Nat'l Intelligence Rep., Sept. 30, 1992.) At the same time, the National Health Care Anti–Fraud Association ("NHCAA") issued a "Fraud–Alert" to its members, including plaintiffs-insurers BC/BS Texas and BC/BS New Jersey, informing them that several unidentified clinical laboratories were "unbundling" certain tests and billing them separately from profiles in order to "generate substantial additional revenue for the laboratories." (SBCL's Ex. 13, *NHCAA Fraud Alert # 1992–7.*)

In December 1992, the *New York Times*, among others, reported that NHL had settled the action.[1] (SBCL Ex. 16, Calvin Sims, *Company to Pay $110 Million in Health–Claims Fraud Suit*, New York Times, Dec. 19, 1992.) In announcing the settlement on December 8, 1992, the U.S. Attorney in San Diego stated that the government was "investigating other companies for similar activity." (SBCL Ex. 15, Dana Priest, *Lab Firm to Pay 110 Million in Blood Test Fraud: Company Also Admits Felonies in Billing For Un-*

---

1. Other news articles that reported the settlement include: (SBCL's Ex. 14, Richard Turner, *National Health Labs Pleads Guilty to Fraud, Agrees to Pay $110 Million*, Wall St. J., Dec. 21, 1992), (SBCL's Ex. 15 Dana Priest, *Lab Firm to Pay $110 Million in Blood Test Fraud; Company Also Admits Felonies in Billing for Unnecessary Work*, Wash. Post, Dec. 19, 1992), (SBCL's Ex. 16, Calvin Sims, *Company to Pay $111 Million in Health–Claims Fraud Suit*, New York Times, Dec. 19, 1992), (SBCL's Ex. 17, Tony Perris, *U.S. Settles Huge Fraud Case with Medical Lab*, Los Angeles Times, Dec. 19, 1992), (SBCL's Ex. 18, *Medical Marketing at Public Expense*, Los Angeles Times, Dec. 19, 1992), (SBCL's Ex. 19, Sharon Jones, *Lab Firm Must Pay Millions for Fraud*, San Diego Union–Tribune, Dec. 19, 1992); (SBCL's Ex. 20, Connie Cass, *Medical Lab Agrees to Pay $110 for Fraudulent Billing*, Assoc. Press, Dec. 18, 1992); (SBCL's Ex. 21, *National Health Plunges on Fire, Guilty Pleas*, U.P.I., Dec. 21, 1992).

*necessary Work*, Wash. Post, Dec. 19, 1992.) The U.S. Attorney further stated that the "criminal practices that [NHL] has admitted ... are not unique to [NHL]. Indeed [he] would go so far as to say that, in one form or another, these are industry-wide practices." (*Id.*)

In January 1993, in the aftermath of the NHL settlement, several of the nations largest private health insurers, including the lead plaintiff in this case (Blue Cross of California), asserted publicly that they would be "taking a closer look at claims for lab tests as a result of the [NHL] case." (SBCL's Ex. 23, Mary Wagner, *Settlement's Repercussions Feared*, Mod. Healthcare, Jan. 11, 1993 at 15.) As one industry consultant remarked, NHL "put[ ] up the antennae of every insurance company in the nation." (*Id.*)

In February 1993, the press reported that the Justice Department was probing another top U.S. laboratory company—MedPath, Inc., (SBCL's Ex. 27, *Feds Pursue Lab Industry Probe, MetPath Cooperating With Requests*, Nat'l Intelligence Rep., Feb. 10, 1993.) Several months later, in June 1993, CNN ran a special high-profile "investigative" report on the clinical laboratory industry. The report described how the major laboratories billed for test profiles, and alleged that they often "unbundled" tests. The report also stated that "sources tell *CNN* that five other large medical labs are also now under investigation on similar fraud charges by state and federal authorities across the country." (SBCL Ex. 28, *CNN Probe of NHL Fraud Cases Cites Inaction By Government*, Nat'l Intelligence Rep., June 14, 1993.) Moreover, the CNN report quoted an NHL spokesman who said that its billing techniques were "common industry practice." (*Id.*)

In July 1993, the Justice Department announced that it had reached settlements with Med–Chek Laboratories for the same

"unbundling" practices engaged in by NHL (SBCL's Ex. 30, *Justice Department Scores More Big–Buck Settlements against Labs*, Nat'l Intelligence Rep., Aug. 20, 1993.)

On August 16, 1993, the *Wall Street Journal* ran a front-page story detailing how the government had built its case against NHL and the impact the prosecution had in sparking equally aggressive investigations of clinical laboratory testing and billing practices. The article also reported that several other clinical laboratories were under investigation, and that these laboratories were employing the same billing practices as NHL. (SBCL's Ex. 31, Rhondle & Amy Stevens, *Under Examination: Investigators Intensify Crackdown on Fraud In the Healthcare Industry*, Wall St.J., Aug. 16, 1993.) Less than two weeks later, SBCL publicly acknowledged that it had received an OIG investigative subpoena as part of an industry-wide probe of laboratory billing practices. (SBCL's Ex. 32, Milt Freudenheim, *U.S. Subpoenas Blood–Test Files in New Health Care Fraud Inquiry*, New York Times, Aug. 28, 1993.) One of the named plaintiffs-insurers herein and member of the NHCAA,[2] BC/BS of Texas, admitted that on August 27, 1993, it had actual knowledge of "certain aspects" of SBCL's improper billing practices. (SBCL's Ex. 2, Plaintiff's Response To First Set of Interrogatories.) This information led BC/BS Texas to become suspicious of SBCL's billing, and it commenced an investigation. (Plaintiffs Insurers Opp.Mem. at 17.)

In early September 1993, two more of the nation's largest clinical laboratories—Unilab and Metpath—agreed to pay the federal government $39.8 million to settle charges that they had improperly "added-on" tests. (SBCL's Ex. 33, Rhonda L. Rundle, Corning Unit, *Unilab Pay $39.8 Million to Settle Allegation of Medicare Fraud*, Wall St.J., Sept. 14, 1993.)

**2.** The NHCAA exists to educate its members in the "detection [and] investigation of health care fraud" and to provide an "information-

sharing network ... to aid in the investigation of health care fraud." (SBCL's Ex. 5, NHCAA January 1993 Fact Sheet.)

On September 19, 1993, the CBS television program, *60 Minutes,* aired a story called "Blood Money," which discussed the NHL and Metpath settlement. The story sought to explain the billing practices that precipitated those settlements, and attempted to "sting" NHL and SBCL by having a program producer fill a prescription for a blood test profile, along with a complete blood count and thyroid test, at NHL and SBCL testing facilities. The SBCL facility purportedly "added-on" a test for Magnesium, an allegation made on camera. (SBCL's Ex. 37, *60 Minutes,* vol. XXVI, No.1, Sept. 19, 1993 Tr. at 63–69.)

The plaintiffs-insurers, for their part, all have standard practices and procedures designed to detect billing irregularities, and "may have found some errors and difficulties with claims submitted by SBCL long before they filed the present action". (Pl.Stmt.¶ 2). Four of the plaintiffs-insurers, BC/BS of Texas, Golden Rule, Guardian, and John Deere, maintain that they contacted SBCL about billing irregularities discovered between 1992 and 1995, and assert that in response, SBCL denied any fraudulent acts.

### STANDARD

Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an oth-

erwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Liberty Lobby, supra,* at 247–48, 106 S.Ct. 2505 (emphasis original). The Supreme Court has noted that:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims ... [and] it should be interpreted in a way that allows it to accomplish this purpose." *Celotex v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### DISCUSSION

1. *Counts VI and VII.*

SBCL first argues that the plaintiffs-insurers' remaining state law claims set forth in counts VI and VII are barred by the applicable statute of limitations. Specifically, SBCL asserts that the undisputed facts demonstrate that the plaintiffs-insurers knew, or should have known, of SBCL's challenged billing and coding practices by 1993. Because the plaintiffs did not file their original complaint until August 19, 1997, SBCL asserts that: (a) count VI, which alleges violations of the Pennsylvania Insurance Fraud Statute, 18 Pa.Con.Stat. § 4117(a)(2), is barred by Pennsylvania's two-year limitation on fraud claims; and (b) count VII, which alleges common law fraud, is barred by Connecticut's three year limitation on fraud claims.

The plaintiffs-insurers respond that SBCL is not entitled to summary judg-

ment because SBCL has failed to prove either that they knew or should have known of SBCL's fraudulent schemes prior to August 19, 1994, and, in any event, SBCL's own active, fraudulent concealment of its schemes tolled the statutes of limitations. The court agrees with SBCL.

■ Ordinarily, the statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of [the] action." *Williams v. Perry,* 960 F.Supp. 534, 538 (D.Conn.1996); *Pearce v. Salvation Army,* 449 Pa.Super. 654, 674 A.2d 1123, 1125 (1996) (cause of action for fraud does not accrue until the fraud has been discovered). A plaintiff that does not have actual knowledge of the injury may nevertheless trigger the running of the limitations period if the plaintiff "should have known" of the injury. *Dodds v. Cigna Securities Inc.,* 12 F.3d 346, 350 (2d Cir.1993). "The means of knowledge are the same thing in effect as knowledge itself." *Wood v. Carpenter,* 101 U.S. 135, 143, 11 Otto 135, 25 L.Ed. 807 (1879).

■ Consequently, when circumstances. suggest to a person that he may have been defrauded, a "duty of inquiry" arises and knowledge of the alleged fraud will be imputed to him. *Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983). Such suggestive circumstances are known as "storm warnings" of possible fraud. *Ciccarelli v. Gichner Systems Group, Inc.,* 862 F.Supp. 1293 (M.D.Pa.1994); *accord In re Integrated Resources,* 815 F.Supp. 620, 639 (S.D.N.Y.1993); *Quantum Overseas, N.V. v. Touche Ross & Co.,* 663 F.Supp. 658, 663–64 (S.D.N.Y.1987).

Storm warnings need not provide notice of the entire fraud to constitute inquiry notice. *Dodds v. Cigna Securities, Inc.,* 12 F.3d 346, 352 (2d Cir.1993). Once on inquiry notice, the plaintiff has an obligation to discover the fraud with reasonable diligence. *Stone v. Williams,* 970 F.2d 1043, 1049 (2d Cir.1992) *(citing Campbell v. Upjohn Co.,* 676 F.2d 1122, 1128 (6th Cir. 1982)). "The test as to when fraud should with reasonable diligence have been discovered is an objective one." *Armstrong,* 699 F.2d at 88.

■ Where, on the other hand, a defendant deliberately conceals material facts relating to his wrongdoing, time does not begin to run until the plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit. *Barrett v. United States,* 689 F.2d 324, 327 (2d Cir.1982). Deliberate concealment requires "clear, concise and unequivocal evidence" of conduct directed to the very point of "obtaining a delay in asserting the cause of action." *Gibbons v. NER Holdings Inc.,* 983 F.Supp. 310, 317 (D.Conn. 1997); *see also Bohus v. Beloff,* 950 F.2d 919, 925–26 (3d Cir.1991); *Pocahontas Supreme Coal Co. v. Bethlehem Steel,* 828 F.2d 211, 219 (4th Cir.1987) (claim of fraudulent concealment cannot "rest on no more than an alleged failure to own up to illegal conduct").

■ In this case, the plaintiffs filed the original complaint on August 19, 1997. Count VI, which alleges violations of the Pennsylvania Insurance Fraud Statute, 18 Pa.Con.Stat. § 4117(a)(2), is governed by Pennsylvania's two-year limitations period governing fraud claims.[3] Count VII,

---

3. Pursuant to the choice of law rules of Connecticut, count VI is governed by a Pennsylvania limitations period. *See Rogers v. Grimaldi,* 875 F.2d 994, 1002 (2d Cir.1989) (forum state's choice of law rules govern pendent state law claims in a federal question case). Under the Connecticut rule, limitations periods are set by the law of the forum state. *Baxter v. Sturm, Ruger & Co., Inc.,* 230 Conn. 335, 339, 644 A.2d 1297, 1299 (1994) (under the "general rule," limitations period is set by

"lex fori"). An exception to this general rule, however, requires that the limitations period of a foreign state apply if (1) the foreign state created the cause of action by statute, and (2) the limitations period is substantive. *See Feldt v. Sturm, Ruger & Co.,* 721 F.Supp. 403, 406 (D.Conn.1989) (applying Georgia limitation in suit where Georgia statute created the cause of action). A statute of limitations is "substantive" with respect to a right or claim that was not present at common law. *Id.*

which alleges common law fraud, is governed by Connecticut's three-year limitation on fraud claims.[4] Consequently, the Pennsylvania statutory claim and the common law fraud claim are time-barred if the challenged billing practices were "knowable" to the plaintiffs before August 19, 1994 (or 1995 for count VI alone).

 The court concludes that because the plaintiffs-insurers knew or had reason to know of SBCL's challenged practices prior to August 19, 1994, and there is no evidence of active, fraudulent concealment, counts VI and VII are time-barred.[5] The undisputed evidence demonstrates that between 1990 and 1993, the national media and various professional organizations released to the public volumes of information concerning fraudulent billing practices by several national, clinical laboratories, to include SBCL. This highly publicized information disclosed federal government investigations and settlements with several national laboratories for some of the same conduct as alleged in the within action, to include "unbundling," and "add-ons." Moreover, federal prosecutors were quoted as saying that these practices were "industry-wide" and that SBCL had become the subject of a federal investigation for irregular billing practices. Indeed, one of the plaintiffs-insurers herein, BC/BS of Texas, admitted to having actual knowledge of at least some of SBCL's irregular billing practices as early as August 1993. BC/BS of Texas, as well as other plaintiffs-insurers herein, were members of the NHCAA, an organization where members share information to aid in the investigation of health care fraud.

(cause of action did not exist under Georgia common law). Count VI is created by a Pennsylvania statute, and its limitations period is "substantive" because the statute gives insurers new "rights" to seek treble damages and to prove fraud claims by a preponderance of the evidence, a less stringent standard than the standard at common law which requires one to prove fraud by "clear and convincing" evidence. See e.g., Wexco, Inc. v. IMC, Inc., 820 F.Supp. 194, 203 (M.D.Pa.1993); Majestic Box Co., Inc. v. Frank, 1998 WL 720463 at *2–3 (E.D.Pa. Sept.2, 1998). The limitations period governing Count VI is, accordingly, substantive and is thus set by Pennsylvania law. The Pennsylvania insurance fraud statute does not provide its own limitations period and courts have not ruled on the appropriate limitation. Under Pennsylvania law, a cause of action based on a statute that lacks an express limitation provision is governed by the limitation period covering the most "analogous" enumerated claim. Menichini v. Grant, 995 F.2d 1224, 1229 (3d Cir.1993). The cause of action with a specified limitations period that is most "analogous" to the plaintiffs' insurance fraud claim is common-law fraud. See e.g., Menichini v. Grant, 995 F.2d 1224, 1229 (3d Cir.1993). Accordingly, Count VI is governed by Pennsylvania's two year limitation on claims for common law fraud. See 42 Pa.Con.Stat. § 5524(7) (two-year limitation on claims for "tortious conduct" including "deceit or fraud").

4. Whether or not count VII is asserted under Connecticut law, it is a common law claim, and therefore is governed by the Connecticut, three year limitations period for common-law fraud. See Conn.Gen.Stat. § 52–577.

5. The plaintiffs-insurers have moved pursuant to Rule 56(e) to strike SBCL exhibits 24–37 for want of authentication and on hearsay grounds. The motion is denied. While SBCL filed several newspaper articles and other media reports without proper authentication, SBCL subsequently cured this technical defect with the appropriate certifications in its Memorandum In Opposition To Plaintiffs' Motion To Strike, which the court permits SBCL to file nunc pro tunc. See Breitling, U.S.A., Inc. v. Federal Express Corp., 45 F.Sup.2d 179, 182 n. 3 (D.Conn.1999) (accepting nunc pro tunc "additional materials ... because the defendant has cured the defect without prejudice to the plaintiff by filing an affidavit properly authenticating the document in question"); Kidder, Peabody & Co. v. IAG Int'l Acceptance Group, 28 F.Sup.2d 126, 130 (S.D.N.Y.1998) (permitting summary judgment movant to submit, nunc pro tunc, affidavits authenticating challenged materials). Moreover, because SBCL has not offered the newspaper articles and reports for the truth of the matter asserted, but to show that the plaintiffs-insurers were on inquiry notice of the matters reported therein, the plaintiffs-insurers' hearsay objection is overruled. See Perez v. Alcoa Fujikura, Ltd., 969 F.Supp. 991, 999 (W.D.Tex.1997) (admitting newspaper articles so long as they are not considered for the truth of the matter asserted).

The court presumes that this highly publicized, industry-wide information was known to the plaintiffs prior to the end of 1993. *See In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.,* 815 F.Supp. 620, 640 (S.D.N.Y.1993) ("sophisticated investors legally may be presumed to know of information in the public domain, such as newspapers and magazine articles"); *Seibert v. Sperry Rand Corp.,* 586 F.2d 949, 952 (2d Cir.1978) (plaintiff shareholders presumed to know information in public domain); *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.,* 723 F.Supp. 976 (S.D.N.Y.1989) (plaintiffs should have known about "general publicity" in the press and the financial community); *Bibeault v. Advanced Health Corp.,* 1999 WL 301691 at *5 (S.D.N.Y. May 12, 1999) ("when the facts giving rise to a fraud action are in the public domain, courts regularly impute constructive knowledge to the plaintiffs for the purpose of triggering the statute of limitations").

With deference to the rule that a "storm warning" need not provide notice of the entire fraud to constitute inquiry notice, the court concludes that the cumulative affect of the above information constitutes a "storm warning" of sufficient magnitude to place the insurers on inquiry notice of SBCL's potentially fraudulent billing practices no later than the end of 1993.

■ As set forth *supra,* if SBCL fraudulently concealed material facts relating to its wrongdoing, the limitations period would not begin to run until such time as the plaintiffs-insurers discovered, or by reasonable diligence could have discovered, the basis of the lawsuit. *Barrett,* 689 F.2d at 327. In this case, however, the plaintiffs-insurers have failed to offer any evidence that SBCL actively concealed the challenged activities. In this regard, four of the plaintiffs-insurers, Blue Cross/Blue Shield of Texas, Golden Rule, Guardian, and John Deere, maintain that they contacted SBCL about billing irregularities discovered between 1992 and 1995, and assert that in response, SBCL denied any fraudulent acts. Because, however, fraudulent concealment cannot "rest on a failure to own up to illegal conduct," *Pocahontas,* 828 F.2d at 218–19, the plaintiffs-insurers are not entitled to a tolling of the limitations period. In sum, because the plaintiffs-insurers knew or had reason to know of SBCL's challenged practices prior to August 19, 1994, and there is no evidence of active, fraudulent concealment, counts VI and VII are time-barred.

## 2. *Count VIII*

SBCL next argues that count VIII, which seeks relief under the equitable doctrine of "unjust enrichment," is properly dismissed because under Connecticut law, a claim sounding in equity is barred if a plaintiff's related legal claims are time-barred. The plaintiffs-insurers respond that there is simply no authority for SBCL's proposition and, in any event, actions in equity are not governed by a statute of limitations. The court agrees with SBCL.

■ In Connecticut, claims for "unjust enrichment" are considered "equitable" rather than "legal" causes of action. *See e.g. Meaney v. Connecticut Hospital Assoc.,* 250 Conn. 500, 511, 735 A.2d 813 (1999). Where a plaintiff pursues an action for fraud based on both "legal" and "equitable" principles, it is well settled that "equity will withhold its remedy if the legal right is barred by the relevant statute of limitations." *Campbell v. New Milford Bd. Of Educ.,* 36 Conn.Supp. 357, 364 n. 5, 423 A.2d 900, 905 (1980); *see also Williams v. Walsh,* 558 F.2d 667, 671 (2d Cir.1977) (affirming summary judgment on "equitable" claim where legal claims dismissed on limitations grounds). Here, the "equitable" claim for unjust enrichment is based on the same conduct as the "legal" claims set forth in counts VI and VII. Because the court has concluded that counts VI and VII are time-barred, the court will exercise its equitable powers to withhold relief on the claim for unjust enrichment. Accordingly, summary judg-

ment is granted with respect to count VIII.

## CONCLUSION

For the foregoing reasons, the defendant's motion (document no. 225) is GRANTED.

It is so ordered, this 31st day of March, at Hartford, Connecticut.