## In re: MERRILL LYNCH & CO., INC. RESEARCH REPORTS SECURITIES LITIGATION

**This Document Relates to: In re Merrill Lynch & Co., Inc. Internet Strategies Fund Securities Litigation, 02-CV-3176(MP).**

**No. 02 MDL 1484.**

United States District Court, S.D. New York.

Oct. 29, 2003.

---

Abbey Gardy, LLP (by Jill S. Abrams and Evan J. Kaufman), New York, New York, for Plaintiffs.

Kaplan Fox & Kilsheimer LLP (by Frederic S. Fox, Laurence D. King, and Donald R. Hall), New York, New York, for Plaintiffs.

Clifford Chance U.S. LLP (by James N. Benedict, Mark Holland, and Mary K. Dulka), New York, New York, for Defendants Fund Asset Management, L.P., FAM Distributors, Inc. (f/k/a Merrill Lynch Funds Distributor), Princeton Services, Inc., Paul G. Meeks, Terry K. Glenn, Donald C. Burke and Arthur Zeikel.

Merrill Lynch Investment Managers, L.P. (by Lori A. Martin, First Vice President and Assistant General Counsel), Plainsboro, NJ, for Defendants Fund Asset Management, L.P., FAM Distributors, Inc. (f/k/a Merrill Lynch Funds Distributor), Princeton Services, Inc., Paul G. Meeks, Terry K. Glenn, Donald C. Burke and Arthur Zeikel, of counsel.

Skadden, Arps, Slate, Meagher & Flom LLP (by Jay B. Kasner, Edward J. Yodowitz, Scott D. Musoff and Joanne Gaboriault), Four Times Square, New York, New York, for Defendant Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith Incorporated.

Swidler Berlin Shereff Friedman, LLP (by Andrew J. Levander, Joseph F. Donley and Laura Proctor), New York, New York, for Defendant Merrill Lynch Global Technology Fund, Inc.

Bressler, Amery & Ross (by Hugo A. Hilgendorff IV and David J. Libowsky), New York, New York for Defendants Charles C. Reilly, Roscoe S. Suddarth, Richard R. West and Edward D. Zinbarg.

Bass Berry & Sims PLC (by Michael L. Dagley), Nashville, Tennessee, for Defendants Charles C. Reilly, Roscoe S. Suddarth, Richard R. West and Edward D. Zinbarg.

## DECISION AND ORDER

POLLACK, Senior District Judge.

This case is yet another of the class actions following the long boom and eventual bust of the internet sector of the securities markets. After years of unrestrained speculation in volatile and highly untested common stocks, the internet bubble burst in the Spring of 2000, dragging the prices of common stocks down with it, and generating a wave of litigation. A detailed recitation of the relevant factual context may be found in the Court's decisions in the companion class actions to date (made a part hereof). *See In re*

*Merrill Lynch & Co., Inc.,* 273 F.Supp.2d 351 (S.D.N.Y.2003) (the "24/7 and Interliant Action") (dismissing 24/7 Real Media and Interliant complaints); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 272 F.Supp.2d 243 (S.D.N.Y.2003) (the "Global Technology Fund Action") (dismissing Global Technology complaint).

The present case most resembles the Global Technology Fund Action. As in the latter case, Plaintiffs, shareholders in the Merrill Lynch Internet Strategies Fund ("ISF" or "the Fund"), are not suing Merrill Lynch analysts for their predictions of future target prices for securities in the technology sector. Rather, the suit is against a proprietary mutual fund that invested in the common stock of internet companies, including some companies covered by Merrill Lynch analysts. Plaintiffs are suing the Fund, its Trust, its officers and directors, its investment adviser and affiliates, its underwriters, and the adviser's corporate parent, Merrill Lynch & Co., Inc. ("ML & Co."), and broker-dealer affiliate, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF & S").

Plaintiffs' Amended Complaint here alleges nothing new, and their Opposition merely attempts to reargue the grounds for this Court's decisions in the Global Technology Fund, 24/7 and Interliant Actions.[1] Absent any change in the applicable law – that is, absent the creation of any SEC regulation or other legal authority that would require a mutual fund to disclose the information Plaintiffs demand –

the reasoning in these earlier decisions applies to the claims here. Once again, (1) Plaintiffs' claims are time-barred because news media put the Plaintiffs on inquiry notice more than one year before they filed their initial complaint in April 2002;[2] (2) Defendants had no duty to disclose the allegedly omitted information; (3) Plaintiffs have failed to allege losses recoverable under Sections 11 or 12(a)(2); (4) Plaintiffs fail to state a claim for control person liability under Section 15; and (5) Plaintiffs' 1940 Act claim should be dismissed because (i) there is no private right of action under Section 34(b), and (ii) even if there were, the claim would have to brought derivatively on behalf of the Fund.

## DISCUSSION

### A. Sections 11 and 12(a)(2) of the 1933 Act

#### 1. *Plaintiff's 1933 Act Claims are Time–Barred*

 ██ Section 13 of the 1933 Act provides that any claim under Section 11 or Section 12(a)(2) must be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. Plaintiffs' various claims under the 1933 Act are therefore time-barred. The same news media this Court cited in its decisions dismissing the complaints in the Global Technology Fund,

---

**1.** This Court already has denied motions to alter, amend or reconsider those decisions. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 272 F.Supp.2d at 265 (denying plaintiffs' motion to alter judgment and amend complaint in Global Technology Fund Action); *In re Merrill Lynch & Co., Inc.,* 273 F.Supp.2d at 382 (denying plaintiffs' motion in 24/7 Action for reconsideration and denying plaintiffs' motion in Interliant Action for

amendment of the judgment and for leave to amend complaint).

**2.** As we held in the Global Technology Fund Action, "Section 13 of the 1933 Act [provides that] any claim under Section 11 or Section 12(a)(2) must be brought 'within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.' " 15 U.S.C. § 77m.

24/7 and Interliant Actions – and in its decisions denying alteration or reconsideration of those dismissals – also put Plaintiffs here on inquiry notice, more than one year before they filed their initial complaint in April 2002, of the alleged conflicts of interest at issue. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F.Supp.2d at 250–52, 266–67 (describing articles between September 1995 and June 2000); *see also In re Merrill Lynch & Co., Inc.*, 273 F.Supp.2d at 383–88 (same).[3]

Plaintiffs assert in their opposition briefs that the overwhelming collection of notices from the press, other media, and top securities regulatory officials available by early 2000 were mere "news organization tidbits" and thus "utterly insufficient" to provide them with the "quantum of information" necessary to put them on inquiry notice of the "course of conduct alleged in the complaints." (Pls.Mem.21, 22). The reality of the situation is directly to the contrary. Plaintiffs, and indeed the whole investment community, were on inquiry notice of the alleged "fraud." The Court has provided extended discussion and citation of the various sources of inquiry notice in the opinions cited above, and such discussion need not be repeated here.

Plaintiffs also cite several news articles which they claim contain "Defendants *contemporaneous*, explicit denials of any wrongdoing". (Pl. Opp. at 24 (emphasis added)). These denials, say Plaintiffs, "wholly negate[ ]" any inquiry notice. (Pl. Opp. at 23–24, citing *Newman v. Warnaco Group, Inc.*, 335 F.3d 187 (2d Cir.2003)). But the articles cited by Plaintiffs appeared between September 2000 and July 2001; they are not "contemporaneous" with the news articles appearing between September 1995 and June 2000 that were cited in the Court's Global Technology Fund, 24/7 and Interliant decisions. Moreover, these articles do not justify Plaintiffs failure to make a timely inquiry into the probable fraud they allege. A plaintiff's duty to inquire is not dissipated merely because of a defendant's denial of wrongdoing. *See LC Capital Partners, L.P. v. Frontier Ins. Group*, 318 F.3d 148, 155 (2d Cir.2003) ("[R]eassuring statements will prevent the emergence of a duty to inquire or dissipate such a duty only if an investor of ordinary intelligence would reasonably rely on the statements to allay the investor's concern."); *Slavin v. Morgan Stanley & Co., Inc.*, 791 F.Supp. 327, 331 (D.Mass.1992) (in a securities fraud case "[defendant's] denial of wrongdoing should not have deterred this plaintiff from pursuing its inquiry into the matter where the plaintiff was on inquiry notice that it had been defrauded"); *see also Blue Cross of California v. Smithkline Beecham Clinical Laboratories, Inc.*, 108 F.Supp.2d 116, 124 (D.Conn.2000) (holding, in a common law fraud case, that statute of limitations would not be tolled simply because defendant denied any fraudulent acts); *Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218–219 (4th Cir.1987) (affirming dismissal of Sherman Act claims on grounds that statute of limitations would not be tolled simply because defendant "fail[ed] to own up to illegal conduct").

---

**3.** "[O]n a motion to dismiss, a court may consider ... 'matters as to which judicial notice may be taken....' " *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (quoting *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993)). The Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment. *See In re Sterling Foster & Co., Inc. Secs. Litig.*, 222 F.Supp.2d 312, 321 (E.D.N.Y.2002); *Schwenk v. Kavanaugh*, 4 F.Supp.2d 116, 118 (N.D.N.Y.1998).

### 2. Defendants had no duty to Disclose the Allegedly Omitted Information

To state a claim under Sections 11 and 12(a)(2), a plaintiff must allege that the defendant had a legal obligation to disclose the allegedly omitted information. *See* 15 U.S.C. §§ 77k, *l*(a)(2); *In re Ultrafem Inc. Sec. Litig.*, 91 F.Supp.2d 678, 699 (S.D.N.Y.2000) (dismissing Sections 11 and 12(a)(2) claims where the plaintiffs failed to demonstrate that the defendants were obligated to disclose the omitted language); *Geiger v. Solomon–Page Group, Ltd.*, 933 F.Supp. 1180, 1187–88 (S.D.N.Y. 1996) (dismissing Sections 11 and 12(a)(2) claims because the defendants were not required to disclose allegedly omitted information); *accord Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1189 (11th Cir.2002) ("[T]o avoid dismissal of a section 11 omission claim, plaintiffs must properly allege ... [that] defendants were under a duty to disclose the omitted material information").

The essence of Plaintiffs' Sections 11 and 12(a)(2) claims is that the Fund's Registration Statements and Prospectuses failed to disclose several material facts: First, that the Fund invested in companies with which MLPF & S had or sought investment banking business (*see, e.g.,* Compl. ¶¶ 3, 40, 103–108, 120, 131); Second, that MLPF & S issued purportedly misleading research reports on companies the Fund held (*see, e.g.,* Compl.¶¶ 3, 73, 83, 103–108, 131, 133); Third, that the Fund bought Merrill Lynch's "buy rated stocks" and the stocks of companies with which Merrill Lynch had investment banking relationships "in order to secure future investment banking revenue" (*see, e.g.,* Compl. ¶¶ 3, 73, 83, 103–108, 131, 133). As in the Global Technology Fund Action, Plaintiffs have failed to plead facts sufficient to show that the Defendants had a duty to disclose the information allegedly omitted from the Fund's Prospectuses and Registration Statements.

■ The information that must be disclosed in mutual fund registration statements and prospectuses is specifically set forth in SEC Form N–1A. Among other things, Form N–1A requires disclosure about investment strategies and risk, management, organization, capital structure, and distribution arrangements. No portion of Form N–1A requires disclosure of the investment banking relationships between the companies whose stocks were purchased by a Fund and the broker-dealer affiliate of the Fund's investment adviser. The federal securities laws impose extensive oversight of mutual fund advisors, broker-dealers, and their relationships with each other. *See* 15 U.S.C. § 80a–17 (codifying Section 17 of the 1940 Act, which recognizes that mutual fund investment advisers may be affiliated with broker-dealers and regulates in considerable detail the circumstances under which the affiliated entities may, and may not, transact business); 17 C.F.R. §§ 270.17a–1—270.17j–1 (codifying the SEC's rules pursuant to Section 17). Given the extensive regulatory regime governing mutual funds and what they must disclose, the absence of a specific directive requiring the particular disclosure these Plaintiffs want presents a serious obstacle to their claim which they cannot overcome. *See In re Digital Island Sec. Litig.*, 223 F.Supp.2d 546, 552 (D.Del.2002) (dismissing complaint alleging failure to disclose in violation of Section 14(e) of the 1934 Act after finding it significant that information required for the documents in question was specifically set forth in two SEC regulations, and no portion of those regulations required the disclosure Plaintiffs demanded).

Moreover, the Defendants cannot be held liable for failing to disclose that

MLPF & S provided investment banking services to companies in the Fund's portfolio if that information was already public. Here, as in the Global Technology Fund Action, Plaintiffs' own Amended Complaint demonstrates that information concerning companies in which the Fund might invest and to whom MLPF & S provides investment banking services was publicly available. (*See, e.g.,* Compl. ¶¶ 103, 106.) Plaintiff therefore cannot show that such information was concealed from the markets or from Fund investors.

■ Plaintiffs' allegation that that MLPF & S issued misleading research reports on companies the Fund held fails for similar reasons. According to the Amended Complaint, Merrill Lynch analysts "were compensated in relation to the amount of investment banking business they generated for Merrill Lynch," and this purported arrangement created "substantial conflicts of interest" that "encouraged analysts to issue favorable ratings on Internet and Internet related stocks with which they personally disagreed." (*See* Compl. ¶ 131.) Plaintiffs claim that the Fund, and those associated with the Fund, had a duty to obtain and disclose the underlying conflicts of interest that allegedly made the reports of Merrill Lynch misleading on securities held by the Fund. This claim fails because the information regarding the alleged conflict of interest was public knowledge, and had been for years. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F.Supp.2d at 251–252 (citing news articles describing analysts' reluctance to anger companies that could become investment banking clients, and describing conflicts between analysts and investment bankers due to the analysts' source of compensation).

■ Plaintiffs' third essential claim – that the Fund bought Merrill Lynch's "buy rated stocks" and the stocks of companies with which Merrill Lynch had investment banking relationships in order to secure future investment banking revenue – also fails. The Complaint does not allege facts sufficient to support the allegation that the Defendants chose certain companies for the Fund in order to enhance MLPF & S' investment banking business. The only facts the Complaint cites to support its allegation are that "a significant portion of the ISF's stock holdings consisted of companies [with] which Merrill Lynch had, or was pursuing, an investment banking relationship." (Compl. ¶ 103.) The Complaint never alleges a fact that, if true, would demonstrate that the Fund purchased securities without regard to whether they were good investments for the Fund's shareholders and only to secure investment banking business for MLPF & S. As one of the world's largest investment banks, MLPF & S provided investment banking services and issued research reports for many of the world's leading technology companies. That the Fund's holdings and the clients of MLPF & S overlap would is not surprising, and hardly shows that Defendants' alleged scheme caused concomitant loss of Fund value, or that participants in this alleged scheme acted with scienter. Thus Plaintiffs' essential Sections 11 and 12(a)(2) claims fail for the same reasons that these claims failed in the Global Technology Fund Action.

■ Plaintiffs' Opposition Memorandum points to only one allegation in their Amended Complaint that is not addressed in the decisions dismissing the Global Technology Fund, 24/7 and Interliant Actions: the fact that Merrill Lynch Financial Consultants received "lucrative incentives" such as "SEEDS" points for selling shares of the Internet Strategies Fund.

(Pl. Opp. at 7–8, 13.)[4] Plaintiffs' Opposition then alleges, for the first time in this Action, that Defendants' failed to disclose those incentives in the Fund's Registration Statements and Prospectuses (*Id.* at 11–14.) Plaintiffs' Amended Complaint makes no such allegation. (*Compare* Pl. Opp. at 11 *with* Compl. ¶¶ 131, 133.) As background information, Plaintiffs' Amended Complaint notes that Merrill Lynch Financial Consultants were given incentives to sell the Fund, but the Complaint contains no allegation that these incentives were not disclosed. (*See* Compl. ¶¶ 68–71.) Instead, the crux of the alleged omissions in Plaintiffs' Complaint here, just like the complaint in the Global Technology Fund Action, is that Defendants failed to disclose that the Fund "would or did invest in companies in which [MLPF & S] had, or with which it was pursuing an investment banking relationship, in order to secure future investment banking revenue" and "would or did purchase securities that had been favorably rated by [MLPF & S] analysts, although those analysts held negative personal views of those companies." (Compl.¶¶ 131, 133.)[5] Plaintiffs may not amend their pleadings by way of their briefs. *See, e.g., Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998), cert. denied, 525 U.S. 1104, 119 S.Ct. 870, 142 L.Ed.2d 772 (1999); *Disabled in Action of Metro. New York v. Trump Int'l Hotel & Tower*, No. 01 Civ. 5518(MBM), 2003 WL 1751785, at *13 (S.D.N.Y. Apr.2, 2003) (Mukasey, C.J.).

▮ But even if Plaintiffs had included such an allegation in their Amended Complaint, it would not give rise to liability under Sections 11 and 12(a)(2) of the 1933 Act because there is no SEC regulation or other legal authority that would require a mutual fund to disclose such information. The information required to be disclosed in mutual fund registration statements and prospectuses is specifically set forth in SEC Form N–1A, as mentioned above. Contrary to Plaintiffs' contention, financial incentives to MLPF & S brokers for selling Fund shares are not required to be disclosed in Form N–1A as part of the Fund's "material investment strategies and risk information." (Pl. Opp. at 13–14.) Form N–1A does require disclosure of any Rule 12b–1 plan that allows the Fund to pay distribution fees for the sales of its shares. *See* Paragraph (b) of Item 8 of Form N–1A. Accordingly, the Fund's Prospectus disclosed that the Fund's Distributor "uses the money that it receives from the deferred sales charge and the distribution fees to cover the costs of marketing, advertising and compensating the Merrill Lynch Financial Consultant or other securities dealer who assists you in your decision in purchasing Fund shares." (Internet Strategies Fund March 14, 2000 Prospectus at 21.) This was adequate disclosure in the circumstances.

---

**4.** Plaintiffs allege that the purpose of the SEEDS system was to allocate the share of common shares offerings underwritten by Merrill Lynch among Merrill Lynch's financial consultants. Financial Consultants were allocated shares of common stock offerings based on the number of SEEDS points they had earned. (Pl. Opp. at 7.)

**5.** The only other basis on which Plaintiffs claim that their Complaint is "distinguishable" from the complaint in the Global Technology Fund Action is that they allegedly purchased their Fund shares because of the "strong reputations and integrity" of MLPF & S and Henry Blodget and would not have done so if they had known about the alleged conflicts of interest. (Pl. Opp. at 15–16.) Contrary to Plaintiffs' contention, such an allegation is merely a variation on their claim that Defendants failed to disclose those conflicts and does not constitute a "distinguishable" difference that saves their Complaint from dismissal.

Plaintiffs Opposition Memorandum also attempts to find a duty to disclose in a rule that the NASD has recently proposed for comment. (*See* Pl. Op. at 14) (citing August 7, 2003 NASD press release.) Proposed rules that have yet to be adopted have no force at law. The possible imposition of a duty of disclosure after the fact does not support a cognizable securities fraud claim. *Novak v. Kasaks*, 216 F.3d 300, 304 (2d Cir.2000).

### 3. Plaintiffs have failed to allege losses recoverable under Sections 11 or 12(a)(2)

▬ Under Sections 11 and 12, if the amount the Plaintiff seeks is not the depreciation in value of a subject security resulting from the offending portion of the prospectus, oral communication, or registration statement, then such amount shall not be recoverable. *See* 15 U.S.C. §§ 77k(e), *l*(b). Where it is apparent from the face of the complaint that the plaintiff cannot recover her alleged losses, dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(6) is proper. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir.1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint"); *In re DoubleClick, Inc. Privacy Litig.*, 154 F.Supp.2d 497, 508 (S.D.N.Y.2001) (Buchwald, J.) ("[a] court may properly dismiss a claim on the pleadings when an affirmative defense appears on its face").

▬ Plaintiffs' Complaint states that by the end of the first quarter of 2001 (i.e., by March 31, 2001), the Fund had lost approximately 74% of its value. (Compl.¶ 141.) Yet, according to Plaintiffs, disclosure of the alleged conflicts of interest at issue did not occur until the New York Attorney General's Complaint and Dinallo Affidavit were filed on April 8, 2002. (Pl. Opp. at 16 n. 8; *see also* Compl. ¶¶ 72 and 143–46 (discussing the April 8, 2002 New York Attorney General's Complaint under the heading "The Truth Begins to Emerge")). Under the 1933 Act, "[t]he price decline before disclosure may not be charged to defendants." *Akerman v. Oryx Communications, Inc.*, 810 F.2d 336, 342 (2d Cir.1987). Thus, just as in the Global Technology Fund Action, Plaintiffs have failed to allege losses recoverable under Sections 11 or 12(a)(2). *See In re Merrill Lynch Research Reports Sec. Litig.*, 272 F.Supp.2d at 253–256. Plaintiffs' argument that Defendants have the burden of proving their affirmative "negative causation" defense and that it cannot be determined on a motion to dismiss already was rejected by this Court. (Pl. Opp. at 16–18; see Global Technology Fund Decision, 272 F.Supp.2d at 253–256.) For the same reason, Plaintiffs' Section 11 and 12(a)(2) claims are dismissed here.

### B. Plaintiffs fail to state a claim for control person liability under Section 15

Plaintiffs also assert a claim for control person liability under Section 15 of the 1933 Act. Because Plaintiffs have failed to state a claim against the Defendants for a primary violation of the federal securities law, their claims for control person liability necessarily fail. *See, e.g., In re Ultrafem Inc. Sec. Litig.*, 91 F.Supp.2d at 701 (dismissing Section 15 claim because plaintiffs did not establish a primary violation of Sections 11 or 12).

### C. Section 34(b) of the 1940 Act

In addition to their 1933 Act claims, Plaintiffs' Complaint asserts a claim under Section 34(b) of the Investment Company Act of 1940 ("1940 Act"). (*See* Compl. Count III.) As with the Section 34(b) claim in the Global Technology Fund Action,

Plaintiffs assert this claim directly on behalf of themselves and the other individual shareholders in the Fund.

Plaintiffs' Opposition declines to address that claim. (Pl. Opp. at 2 n. 3.) Thus, Plaintiffs concede [6] that it should be dismissed for the same reasons stated in the Global Tech Decision: (1) there is no private right of action under Section 34(b), and (2) even if there was, the claim must be brought derivatively on behalf of the Fund. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 272 F.Supp.2d at 255–59.[7]

### CONCLUSION

Plaintiff's Consolidated Amended Complaint is dismissed in its entirety, with prejudice.

**SO ORDERED.**

---

6.  *See* S.D.N.Y. Local Rule 7.1.

7.  Just like the Global Technology Fund, the Internet Strategies Fund is organized as a Maryland corporation. *See* Compl. ¶ 11. Hence the reasoning in the Global Technology Fund decision regarding the Section 34(b) claim applies its entirety, viz. that the Plaintiffs lack standing to sue.